**Sharon Gilbert Timm, Esquire**
**Attorney I.D. 77778**
Penn's Court, Suite 111
350 South Main Street
Doylestown, PA 18901
(215) 489-0179

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH CARLTON**, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 03-CV-1620 |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA**, | : | JURY TRIAL DEMANDED |
| **Lt. Stephen Smyth**, individually and in | : | |
| His official capacity, and **Captain Arthur** | : | |
| **Grover**, Individually and in his official | : | |
| capacity, | : | |
| Defendants. | : | |

## AMENDED COMPLAINT

### I.     JURISDICTION

1.     This action is brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 28 U.S.C. § 1331.  This action is also brought pursuant to the Pennsylvania Human Relations Act (PHRA) 43 P.S. § 951 et seq., as amended 1991. The amount in controversy, exclusive of interest and costs, exceeds $150,000.

2.     Plaintiff has exhausted her administrative remedies.  Plaintiff filed her EEOC claim at Charge No. 170A200708 on or around February 2, 2002, which claim was dual filed with the Pennsylvania Human Relations Commission.  A Right-to-Sue letter was issued on or around December 17, 2002; this claim is timely filed within ninety

1

days of receipt of said notice.  More than one year has passed since the filing of her PHRC claim.

3. State law claims asserted under the PHRA are before this Honorable Court pursuant to 28 U.S.C. § 1367, supplemental jurisdiction.

## II.     PARTIES

4. Plaintiff Deborah Carlton is an adult black female residing at 4050 East Roosevelt Boulevard, Philadelphia, PA  19124.  She is employed by Defendant City of Philadelphia as a Police Officer.  She was hired on or around September 25, 1985.

5. Defendant City of Philadelphia (hereinafter Defendant City) is a municipality created under the laws of the Commonwealth of Pennsylvania.  Defendant is an employer within the meaning of the applicable legislation cited herein.

6. Lt. Stephen Smyth is an adult white male police officer employed by Defendant City.

7. Captain Arthur Grover is an adult white male police officer employed by Defendant City.

## III.     FACTS

8. Allegations contained in paragraphs 1 through 7 above are incorporated herein as if set forth in full.

9. Plaintiff was assigned to the Police Academy in March, 1991.

10. In 1999, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission, claiming race discrimination.  The charge was closed in April, 2001.

11. In April, 2000, she began working in the Driver Training Unit, under the supervision of Lt. Stephen Smyth.

12. Plaintiff's coworkers and supervisors were all aware of her EEOC charges.

13. Smyth gave Plaintiff less desirable work assignments assigned to other personnel.

14. Under Smyth supervision, Plaintiff began to be "sick checked" (a practice wherein police officers either drive by the residence or telephone to determine whether in fact the police officer is home).

15. Plaintiff was the only police officer in her unit who was forced to work the 9:00 A.M. to 5:00 P.M. work schedule.

16. Further, in February, 2001, she complained twice on February 7, 2001, and February 8, 2001, in writing to Captain Grover about intolerable working conditions as the only female working among approximately 15 male officers, such as inappropriate language and conversations.

17. On or around November 8, 2001, Plaintiff was told by her supervisor, Sgt. Clinkscle that under the contract, she was only allowed a 30 minute lunch.

18. Plaintiff asked "if that's what everyone else here does?". Clinkscale replied, he "didn't know what everyone else does because he didn't watch everyone else."

19. No one else at the Police Academy is questioned about their lunch time nor follows the 30 minute lunch rule.

20. The Directive for City of Philadelphia police officers for Performance Reports state all members with permanent civil status up to and including the rank of Chief Inspector are to be rated at least once in every calendar year by their immediate supervisor. Further, for all police personnel the additional factor of "Promotional Potential" is to be typed in and rated.

21. Under the same directive, special performance reports are to be prepared whenever there is a change in the employee's performance sufficient to change the overall rating on their last annual report. The special report remains effective until the next annual report, unless another report is filed prior to submission of subsequent annual report.

22. On December 17, 2001, two days after complaining to Captain Grover of disparate treatment, Plaintiff received a Special Performance Evaluation stating her overall performance was unsatisfactory. Because her overall performance was unsatisfactory, she did not receive a raise, nor was she eligible to transfer or be promoted.

23. Earlier in the year, on or around February 5, 2001, Plaintiff had received a performance evaluation rating her overall satisfactory.

24. On December 24, 2001, Plaintiff's Unit and the Recruitment Unit held their Christmas party. Plaintiff was assigned to work in another office and was the only one not invited to the party.

25. On or around February 12, 2002, Plaintiff was interviewed by Captain Grover regarding potential 75-18's (a disciplinary measure) regarding recruits on the driving course, and denied her request to audiotape disciplinary related interviews.

26. On or around February 25, 2002, Defendant City received Plaintiff's second EEOC Charge of Discrimination based on retaliation.

27. In April 2002, Plaintiff was informed she was to follow the chain of command and only report any questions, concerns, or requests to Cpl. Sidorski. She was also informed she had to put all change of scheduling in writing and receive approval before switching hours with another instructor.

28. On or around April 16, 2002, Plaintiff requested in writing to speak to her commanding officer, Captain Grover.

29. On or around April 19, 2002, her request to speak with the Captain was denied and she was informed she would first have to tell Sidorski what she wanted to speak to the Captain about.

30. On or around April, 18, 2002, Plaintiff put in writing complaints of a hostile working environment, stating that since January, 2002, she had been given assignments to teach on short notice without ample time to prepare for classes.

31. On or around May 30, 2002, Plaintiff received three charges of Conduct Unbecoming an Officer for *inter alia* an unwillingness to cooperate with her coworkers and supervisors, repeated violations of departmental rules and regulations, failure to properly patrol beat; an additional charge of insubordination for refusal to follow orders from a superior officer; two charges for neglect of duty; and one charge for disobedience of orders.

32. In October, 2002, Plaintiff was involuntarily transferred to a patrol district as a disciplinary measure for the charges made in May, 2002.

33. In January, 2003, Plaintiff received notice of her five day unpaid suspension for February 10-14, 2003.

## COUNT I

### Plaintiff v. Defendant City

### Plaintiff's Claims Under the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, et seq., as amended 1991

34. Allegations contained in paragraphs 1 through 33 above are incorporated herein as if set forth in full.

35. Plaintiff opposed her racial harassment and disparate treatment due to her race and was then disciplined. Once Defendant was aware of her claims, the disparate treatment and harassment continued. She was repeatedly disciplined, suspended for a period of five days, given a poor performance evaluation and denied a raise, repeatedly counseled about time out of work, and denied opportunities for other positions.

36. Defendant's conduct was not based on any legitimate business reason, was discriminatory, and was based on the fact she had previously complained of impermissible discrimination.

37. Defendant's conduct in unlawfully retaliating against Plaintiff for complaining of racial discrimination was deliberate and violated Title VII of the Civil Rights Act of 1964, as amended 1991, and has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, and personal humiliation.

WHEREFORE, Plaintiff Deborah Carlton demands judgment in her favor and against Defendant for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000); plus costs of this action, reimbursement of

back pay with interest, front pay, attorney fees, and such other legal and injunctive relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

**Plaintiff v. City of Philadelphia, Lt. Stephen Smyth and Captain Grover**

**Plaintiff's Claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981**

38. Allegations contained in paragraphs 1 through 37 above are incorporated herein as if set forth in full.

39. Defendants, under color of directives, regulations, customs or usages, including but not limited to Philadelphia Police Directives, has deprived the Plaintiff of his rights under the Constitution and laws of the United States.

    (a) That Defendant City engaged in misconduct arising from its impermissible racial animus in its customs or policies

    (b) That the misconduct "was caused by a custom or policy"

    (c) That an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom

    (d) That a decisionmaker possess[ing] final authority to establish municipal authority with respect to the action has issued an official proclamation, policy, or edict

    (e) That Defendant City's course of conduct is considered to be a 'custom' when, though not authorized by law, its practices of its officials [are] so permanent and well settled as to virtually constitute law

40. Section 1981 guarantees to all persons the right to make and enforce contracts, including performance, modification, and termination as well as enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

41. Plaintiff was denied similar terms, privileges and conditions of the contractual employment relationship as other employees.

42. As a direct result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, and personal humiliation.

WHEREFORE, Plaintiff Deborah Carlton demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for back pay with interest, front pay, reinstatement, compensatory damages, plus costs of suit, attorney fees, interest, punitive damages against Defendants Grover and Smyth, and such other legal and equitable relief as the Court may deem, just, proper, and appropriate in the circumstances of this case.

## COUNT III

**Plaintiff v. City of Philadelphia, Lt. Stephen Smyth, and Captain Grover**

**Plaintiff's Claims Under the Pennsylvania Human Relations Act,
43 P.S. § 951 et seq., as amended 1991**

43. Allegations contained in paragraphs 1 through 42 above are incorporated here in as if set forth in full.

44. Pennsylvania's Human Relations Act, 43 P.S. § 951 et seq., prohibits race discrimination in the form of disparate treatment and harassment. Further, it prohibits retaliation for an employee's good faith report of impermissible discrimination.

45. The egregious nature of Defendants' conduct entitles Plaintiff to additional damages under Pennsylvania law.

46. 43 P.S. § 955(e) makes it illegal for a person, employer, employment agency, labor organization or employee to aid, abet, incite, compel, or coerce the doing of any act considered an unlawful discriminatory act by the PHRA.

47. Defendants Smyth and Grover have aided and abetted Defendant City in the discriminatory treatment of Plaintiff based on her opposition to impermissible discrimination.

48. 43 P.S. § 955(d) makes it unlawful for any person or employer to discriminate in any manner against any individual because such individual has opposed any practice forbidden by the PHRA, or because such individual has made a charge under the PHRA.

WHEREFORE, Plaintiff Deborah Carlton demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for compensatory damages, plus costs of suit, attorney fees, interest, and such other legal and equitable relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

                                        Respectfully submitted,

Date: _____      _____
                                                                Sharon Gilbert Timm, Esquire
                                                                Attorney for Plaintiff